**UNITED STATES of America**

v.

**ONE 1951 OLDSMOBILE SEDAN, Serial No. 519 W 8423, Motor No. 8C 187051, lately possessed by Frank Short, 3843 Brown Street, Philadelphia, Pa.**

**No. 52 of 1953.**

United States District Court,
E. D. Pennsylvania.

March 22, 1955.

322

W. Wilson White, U. S. Atty., Eugene J. Bradley, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Samuel Kagle, Philadelphia, Pa., for defendant (claimant).

CLARY, District Judge.

The present action involves the seizure and forfeiture of the above-captioned Oldsmobile Sedan by the District Director, Bureau of Narcotics, Treasury Department, Philadelphia, Pennsylvania, under the provisions of Sections 781 and 782 of Title 49 U.S.C.A. The charges in the case involve the use of the automobile by Frank Short, the owner, to facilitate the sale of a narcotic drug, to wit: heroin. The activities involved in the sale occurred on December 12, 1952, and the seizure of the automobile was effected on March 18, 1953. The testimony in the case establishes the following.

William H. Newkirk, an undercover United States Treasury Narcotics Agent, had been dealing with and had made purchases of narcotic drugs from Frank Short, claimant herein. Agent Newkirk had previously paid Short for a delivery of heroin which Short had failed to deliver up to December 12, 1952. In the afternoon of that day Newkirk went to Short's home at 3843 Brown Street, in the City of Philadelphia, and demanded delivery of the illicit drug for which he had already paid. Short protested that he was unable to make delivery at that time but promised delivery the next day. Newkirk persisted in his demands and Short made an arrangement to meet him at a restaurant located at 1725 South Street in the City of Philadelphia at 7 P.M. that evening. The parties met as arranged and proceeded to Speedie's Bar, located directly across the street from the restaurant, where each consumed a glass of beer. Short again informed Newkirk that he was still unable to make delivery of the paid-for drug but suggested that if Newkirk really wanted drugs and would pay for them, he, Short, would undertake to get some for him that evening. Newkirk demurred at first inasmuch as he had already paid Short but finally agreed to make an additional purchase and to pay therefor. Short then took Newkirk in his, Short's, automobile, the one here in question, to the vicinity of 20th and Naudain Streets. Leaving Newkirk in the automobile, Short entered a house near 20th and Naudain Streets and returned in a relatively short time, accompanied by one Thomas Gaskins, a narcotic dealer. The three thereupon drove to a restaurant in

the vicinity of 40th and Chestnut Streets where they had dinner together. The ostensible purpose of this dinner conference was to assure Gaskins of Newkirk's criminal background and his reliability as a member of the underworld with whom drug purchases could be safely transacted. Apparently Gaskins was satisfied and the parties left the restaurant and drove in the Oldsmobile to 3843 Brown Street where Short left the automobile, went into his home and remained there approximately fifteen minutes. After coming out of the house he drove his car to Union and Aspen Streets (40th and Aspen Streets) and parked it. Short then directed Newkirk to pay $30 to Gaskins, which Newkirk did. Gaskins then left the automobile, walked north on Union Street and disappeared. He returned in about ten minutes and handed Newkirk a package which admittedly contained heroin. No Revenue stamps were affixed to the package and Newkirk gave neither Gaskins nor Short the Treasury Order Form required by statute. The parties then separated. Based on these facts, the District Director, on March 18, 1953, as aforesaid, ordered the Oldsmobile automobile seized. The libel for forfeiture followed.

The claimant bases his defense of the action on two grounds. First, that Short had no part in the actual transfer of narcotics and that the use of the automobile was incidental to the illegal transaction, citing Platt v. United States, 10 Cir., 1947, 163 F.2d 165. In addition, and without citing any authority therefor, he contends that because of the failure to immediately seize the car the Government has lost its right of seizure and that there is no warrant in law for making a seizure after the commission of the act.

The case of Platt v. United States, supra, upon which the claimant places almost sole reliance is completely distinguishable on its facts. There the court held that where the mother knew her daughter was a dope addict but did not know when the daughter asked to use her mother's automobile that she intended to go to a drugstore to obtain morphine, the automobile was not subject to forfeiture for it was not used to "facilitate" the purchase of the morphine within the meaning of the statute. The court reasoned that the entire transaction occurred within the drugstore itself and that the automobile merely enabled the daughter to reach the drugstore, but did not "facilitate" the purchase of the morphine. The court observed that many other means of transportation, including walking, could have been used to reach the drugstore; and the use of the car was only incidental to the purchase.

The facts of the instant case certainly do not warrant the application of the doctrine enunciated in the Platt case. The facts here are more analogous to the cases of United States v. One 1941 Pontiac Sedan, D.C.N.Y.1948, 83 F. Supp. 999 and United States v. One Dodge Coupe, etc., D.C.N.Y.1942, 43 F. Supp. 60. In the Pontiac Sedan case the automobile was used by one Ardito, a drug peddler, for going to and returning from a destination where an illegal sale of narcotics for later delivery was negotiated and an advance payment thereon was received; it was also used as the means for joint transportation of Ardito and a confederate, who later made the actual delivery of the narcotics. The court found that the part the automobile played in this transaction did "facilitate" the illegal sale of narcotics and held that it was therefore subject to forfeiture even though the narcotics were not actually carried in the automobile. In the Dodge Coupe case, an automobile was driven by a person to a meeting place where he obtained narcotics from another person seated in another automobile. The driver of the Dodge was arrested before he could re-enter his car. The Dodge Coupe was seized and a libel for forfeiture filed. There, the court held that the Dodge had been used to "facilitate" the transportation of contraband narcotics and therefore was subject to forfeiture. Although in neither of these cases, as in the Platt case, was the drug ever in the automobile itself, the

rationale which leads to the diverse results is clear. Where an automobile is used to lessen the burden or to assist in the task of executing the illegal transaction, even though the drug is never in the automobile, it "facilitates" the sale or transportation within the meaning of the statute; where, however, the automobile is not in actuality a part of the transaction it does not "facilitate" within the meaning of the statute. The Oldsmobile in the instant case played a major role in the consummation of the illegal sale of narcotics. Its use by Short in transporting the parties to the exact point where the illegal act was completed *in the automobile itself* brings this case squarely within the holding of the Dodge Coupe case, supra.

 The second defense is likewise without merit. The identical contention was advanced in the case of United States v. One 1952 Ford Victoria, D.C. Cal.1953, 114 F.Supp. 458, and was rejected. The court held that there is no significance in a time lapse between the actual illegal use of the car and the subsequent seizure of the car. Sanders v. United States, 5 Cir., 1953, 201 F.2d 158, is authority for the proposition that an officer of the United States, having seen property used in violation of the Internal Revenue laws, might return to the premises of the alleged owner on a later date and, even without warrant or writ, seize the property for an original violation. Judge Harris in his opinion in the Ford case, supra, held that forfeiture occurs when the car is illegally used and that physical repossession of the automobile by the Government may occur subsequently. Following the principles of law set forth in the above two cases, I must hold that the Government was within its rights when on March 18, 1953 it seized the Oldsmobile automobile used in the illegal transaction of December 12, 1952.

The statement of facts and conclusions of law set forth above may be considered as the Findings of Fact and Conclusions of Law of the Court in this case. Counsel for each party have presented requests for findings of fact and conclusions of law.

The Court affirms Plaintiff's Requests for Findings of Fact Nos. 1 to 6 inclusive and Conclusions of Law Nos. 1 to 9 inclusive.

The Court refuses Claimant's Requests for Findings of Fact Nos. 1, 2, 3, 5, 8 and 9; and affirms Requests Nos. 4, 6 and 7.

The Court refuses Claimant's requested Conclusions of Law Nos. 1, 3, 4 and 5; and affirms Request No. 2.

An order decreeing forfeiture of the Oldsmobile Sedan may be prepared and submitted by the United States Attorney.